PHILLIP A. TALBERT
United States Attorney
MICHAEL D. ANDERSON
HEIKO P. COPPOLA
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>    v.<br><br>RUSLAN KIRILYUK,<br><br>           Defendant. | CASE NO. 2:14-CR-83 DJC<br><br>GOVERNMENT'S SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANT'S FORMAL OBJECTIONS |

## I.     INTRODUCTION

Defendant Ruslan Kirilyuk stands convicted following a jury trial of twenty-six counts of mail and wire fraud, one count of aggravated identity theft, and one count of failure to appear, for his role in a significant and sophisticated credit card and identity fraud scheme and his subsequent flight to a foreign country immediately before trial.  Dkt. 338; *see* 18 U.S.C. §§ 1028A, 3146, 1341, 1343.  He is before the court for resentencing after the Ninth Circuit addressed the issue of the calculation of intended loss in card schemes, resulting in a recalculation of his guidelines range.

For the reasons that follow, the United States recommends a total sentence of 248 months of imprisonment.  It is a substantial sentence, however, it is sufficient but not greater than necessary to promote the goals of sentencing set forth in 18 U.S.C. § 3553(a), as it properly accounts for Kirilyuk's leadership role in his extensive fraud scheme and his obstructive conduct.

## II.     DISCUSSION

### A.     A sentence of 248 months of imprisonment is sufficient but not greater than necessary in light of Kirilyuk's role in growing the scheme and attempts to impede prosecution.

Kirilyuk was the leader of a significant fraud scheme, for which a jury convicted him on all 26 counts of mail and wire fraud charged against him, as well as aggravated identity theft and failure to appear. The scheme involved stealing approximately 111,049 American Express account numbers, creating and operating 71 fictitious merchants using stolen identities (many of high school students, who would be unaware of their resulting credit history injury until maturing to an age when they would attempt to acquire assets or open credit lines), charging low amounts per fraudulent transaction to avoid detection, and using student visa holder immigrants and other nominees to open strawholder bank accounts through which the fraud proceeds were turned into accessible money. PSR ¶¶ 6-18. Portions of the money were then covertly transmitted to Moscow, Russia. Kirilyuk was no ordinary role player in this scheme: as shown at trial, he orchestrated and led this scheme, he was the primary conduit to the Russian partner, and brought the other participants together in order to carry out the sophisticated and extensive organized criminal activity. When it was time to face the evidence in this case at trial, Kirilyuk fled the United States, hiding in Mexico for over nine months until his capture. PSR ¶¶ 21-22. Rather than returning voluntarily to this country to accept responsibility, Kirilyuk was deported by Mexican authorities and detained by FBI agents. PSR ¶ 22. These facts were proven to a jury, which found him guilty on all counts beyond a reasonable doubt, and they leave no doubt about the appropriateness of a substantial sentence in this case.

The question as to what sentence is appropriate under the 3553(a) factors starts with the Guidelines themselves, which prove instructive regarding how best to assess Kirilyuk's specific conduct. Kirilyuk's offense conduct places him at the highest levels of the guidelines table. He led a highly sophisticated scheme of five or more participants that targeted over 100,000 victims, stole identities from young students, used stolen authentication features, obstructed justice and committed an offense while on release. As proven at trial through the heavily corroborated testimony of a co-defendant, Kirilyuk set this scheme in motion and served as its leader. Without Kirilyuk, Akhmerov and Melkonyan would likely not have met and formed a criminal enterprise, and neither would have been

involved with the Russian partner. Nor would the many other more minor participant have been involved in opening bank account, removing money from ATMs or otherwise facilitating the fraud scheme. As a result, the Guidelines and those sentencing factors associated with the nature and circumstances of the offense and the history and characteristics of the defendant favor a substantial sentence. The need to protect the public and to deter other similar criminal conduct also weigh in favor of a substantial sentence. This type of scheme is, as shown in trial, difficult to detect and potentially very profitable. A lengthy sentence will help deter the defendant and others from similar crimes. The government, however, also recognizes that a sentence should be no greater than necessary and recommends that the Court impose a total sentence of over twenty years, which is a sentence that will recognize the seriousness of the offense and deter others from similar criminal conduct. This sentence accounts for Kirilyuk's twenty-six mail and wire fraud convictions (188 months) and includes consecutive sentences for his aggravated identity theft (24 months) and his failure to appear (36 months) convictions.

### B. Kirilyuk's objections should be overruled, with the exception of his argument regarding USSG § 4A1.1(d).

Kirilyuk's three formal objections challenge: (1) his leadership role; (2) the loss calculation; and (3) the application of USSG § 4A1.1(d). Kirilyuk's objections to leadership and the loss calculation are meritless. For the reasons stated below, the government concedes that § 4A1.1(d) no longer applies.

**1.** Leadership

Kirilyuk failed to challenge his leadership role in the most recent informal objections filed on May 10, 2023. *See* ECF 592-2. Without citation to authority, Kirilyuk attempts to bootstrap his objections regarding leadership presumably made prior to his last sentencing into his current memorandum.[1] The Court should reject his attempts to formally object now.

Notwithstanding Kirilyuk's failure to informally object during the latest PSR process, it is important to note that while Akhmerov said and did things in the course of his joint criminal conduct with the defendant that are undeniably reprehensible, he testified credibly in two trials and was heavily

---

[1] Kirilyuk makes no such bootstrapping assertion about any other prior informal or formal objections.

corroborated by independently developed evidence.  In his latest formal objections, Kirilyuk challenges Akhmerov's assertion that Kirilyuk was the leader of this scheme, now pointing to an alleged unequal division of proceeds which he claims is indicative of a non-leadership role.  The trial evidence, however, corroborated Akhmerov's testimony.  For example, contemporaneous chats introduced by the government at trial showed that other members of the scheme referred to (and complained about) Kirilyuk's position as the leader of the scheme and the way he bossed around other members of the scheme.  Those chats referred to Kirilyuk to as "Sema," a nickname corroborated by other independent evidence.  That others in the organization also directed activities at times does not diminish Kirilyuk's own role as the ultimate leader.  Kirilyuk's implicit attacks on Akhmerov's credibility simply fail under the weight of the trial evidence.  The Court should reject this argument and overrule the objection.

      **2.**    Loss Calculation

The government asks the Court to reject Kirilyuk's objection to the calculation of the loss amount and find that the loss amount is $3.4 million.  This loss amount is supported by the trial evidence in both Kirilyuk and Melkonyan's trials that showed that there were approximately 119,913 unique access devices which were used in190,321 submitted transactions to American Express in attempt to receive $3.4 million.  American Express approved over 84,000 transactions resulting in Kirilyuk and his co-defendants fraudulently receiving over $1.4 million.  This was shown through a variety of links, including transaction signatures, items recovered in search warrants, linked bank accounts, common IP addresses, witness testimony, and other evidence.  Corroborated testimony further established that Kirilyuk was a knowing participant in that full scheme.  As a criminal participant and leader, Kirilyuk is responsible not just for his own acts, but also for the reasonably foreseeable acts taken by his co-schemers in furtherance of the criminal scheme.  *See* U.S.S.G. § 1B1.3(a)(1)(B).

Notably, the jury did not return a verdict finding Kirilyuk guilty of some partial scheme.  In convicting Kirilyuk on all 26 counts of mail and wire fraud, the jury made a specific factual finding on each count that the mailing or wiring in question was incident to an essential part of the scheme in which Kirilyuk was a knowing participant, and that he or a co-schemer caused such wirings or mailings in furtherance of their common scheme, in a manner reasonably foreseeable to Kirilyuk.  *See* Ninth Cir. Crim. Jury Inst. 8.121, 8.122, 8.124.  To prove Kirilyuk guilty on all of those counts, the government

had to establish the scope of the scheme and Kirilyuk's knowing participation in that large scheme.

One fact among many that supports that finding is the student transcript with Kirilyuk's fingerprint. As shown at trial, the student transcripts were used to open a large proportion of the fake enterprises used in the scheme. But these transcripts were not stolen one-by-one. Instead, they were part of a set from the same school, and were even recovered by agents from one search warrant location. As a result, Kirilyuk's fingerprint on one transcript shows his proximity and knowledge of the others.

To the extent Kirilyuk disputes the method of calculation, the Guidelines are clear that the amount of loss should be "the greater amount of the actual or intended loss." *See* USSG 2B1.1 Commentary, Application Note 3(A). Intended loss is defined as "the pecuniary harm that the defendant sought to *purposely* inflict." *Id.* at (A)(ii), (emphasis added). As noted in USSG § 1B1.7, guideline commentary "may interpret the guideline or explain how it is to be applied" and should be given the same weight as policy statement. Here, the probation officer correctly applied USSG § 2B1.1(b)(1)(I) (loss of over $1.5 million) which mandated a 16-level increase for an intended loss of $3.4 million.

Relying on the Third Circuit's opinion in *United States v. Banks*, 55 F.4th 246 (3rd Cir. 2022) Kirilyuk invites the Court to ignore the clear language of the Guideline and its commentary. The Court should reject Kirilyuk's invitation. First, *Banks* is not mandatory authority in the Ninth Circuit and therefore not binding on this Court. Second, the Third Circuit's holding in *Banks* is unnecessarily stilted and fundamentally ignores those fraud crimes, such as attempts or conspiracies, that have not resulted in an actual monetary loss. Under the Third Circuit's reasoning in *Banks*, in these situations a District Court would be unable to assess the appropriate advisory guideline penalty regardless of the purposeful acts or intentions of the fraud perpetrators, not to mention the size of the fraud. In short, the Third Circuit's holding in *Banks* would lead to an absurd result. Loss as defined by the advisory guidelines is reasonable and properly addresses culpability in fraud cases. Finally, the Ninth Circuit's holding in *United States v. Kirilyuk*, 29 F.4th 1128 (9th Cir. 2022) does nothing to obviate the overall definition of loss found in § 2B1.1 Application Note 3. Unlike the Third Circuit, the Ninth Circuit recognized, as did the Sixth Circuit, that there are a variety of meanings for "loss" and specifically noted that the intended loss in this case was $3.4 million, before it struck down the $500 per-card multiplier. *Id.* at 1138. The Ninth Circuit could have concluded that the overall definition of loss was inappropriate, but it did not.

Rather, it noted, relying on *United States v. Riccardi*, 989 F.3d 346 (6th Cir. 2021) that the goal of commentary is to "interpret the guidelines, not contradict or add to them." *Id.* (citations omitted). The definition of loss found in Note 3 does exactly that – it interprets the guideline without contradiction or addition. For all of the above reasons, this Court should overrule Kirilyuk's objection.

        **3.**    Criminal History Category

Since the fourth revised final PSR was disclosed to the parties in May 2023, the advisory guidelines have been amended with respect the addition of two criminal history points for being under a criminal justice sentence at the time of the offense. Although the Probation Officer's addition of two criminal history points was correct when the PSR was filed, that is no longer the case. In its calculation of Kirilyuk's criminal history, the Court should disregard the two-point adjustment found at Paragraph 53. The correct criminal history category is I.

    **C.**    **<u>Kirilyuk's fails to provide a compelling argument for a downward variance.</u>**

Kirilyuk asserts, based upon his now surgically corrected neck injury and prior alcoholism, that he entitled to a downward departure under § 3553(a). In further support of a downward departure, Kirilyuk asserts that the advisory guidelines substantially overstates the seriousness of the offense because although the victim pool was substantial, the loss suffered by each individual was small. In neither instance is a downward departure from an advisory guideline sentence warranted. In fact, the Probation Officer identified no factors warranting a departure from the advisory guideline sentencing range.

The medical records provided to the Court merely document Kirilyuk's prior injury and the treatment provided by BOP. While it is true that Kirilyuk requested surgical intervention, the records do not support the notion that Kirilyuk will necessarily have more difficulty with confinement in a federal prison. Moreover, Kirilyuk provides no other medical information or documentation in support of this conclusion. Likewise, Kirilyuk's prior alcoholism, divorce, and childhood also do not support a downward departure.

It cannot be said that the advisory guidelines overstate the seriousness of Kirilyuk's fraud. It bears repeating that Kirilyuk conceived and then led a highly sophisticated and profitable scheme with over 100,000 other victims that stole identities from young students, used stolen authentication features,

obstructed justice and committed an offense while on release, specifically fleeing to a foreign country to avoid the consequences of his actions. These facts alone belie the notion that a downward departure is warranted. Additionally, wholly absent from Kirilyuk's pleadings are any indications of remorse for his actions or a recognition that those his actions impacted others. Finally, Kirilyuk's suggestion of a 12-point downward departure is confusing, unsupported in law and fact, and at wholly odds with his calculation of the advisory guideline range in the conclusion of his sentencing memorandum. Instead, the facts support a sentence within the Guidelines range.

### D. Sentence Requested

The government requests that the Court impose a sentence of 188 months each on Counts 1-26 to be served concurrently to each other, 24 months consecutive on Count 27, and 36 months consecutive on Count 28 for a total sentence of imprisonment of 248 months with a three-year term of supervised release. Restitution should be ordered in the amount of $1,418,959.00. The Court must impose a special assessment of $2,800. Given the significant custodial sentence and restitution judgment Kirilyuk faces, the government is not seeking a fine.

///

///

///

### III. CONCLUSION

Kirilyuk was a leader in a significant and complex scheme to steal and misuse identities and hundreds of thousands of credit card account numbers, tamper with the online merchant account system, avoid detection, and impede prosecution even after detection. His conduct as proven at trial beyond a reasonable doubt precludes the arguments he now raises attacking the PSR and seeking an extraordinary and unsupportable downward variance. Because of his particularized role in recruiting others to the scheme to help it grow, realize its fraudulent gains, and avoid detection, as well as his extraordinary flight from justice, Kirilyuk deserves a substantial sentence. Accordingly, the government respectfully requests that he be sentenced to 248 months of imprisonment.

Dated: April 12, 2024

Respectfully submitted,

PHILLIP A. TALBERT
United States Attorney

By: /s/ MICHAEL D. ANDERSON
MICHAEL D. ANDERSON
Assistant United States Attorney